UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JUL 1 3 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-439-GWU

CLEDA PENNINGTON
FOR DESMOND ROBERTS, PLAINTIFF

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY DEFENDANT

## INTRODUCTION

Cleda Pennington appeals from the negative administrative decision on her son Desmond Roberts' application for Child's Supplemental Security Income (SSI) benefits. The case is before the Court on cross-motions for summary judgment.

## LAW APPLICABLE TO CHILD'S SSI BENEFITS

As of 1996 strict standards for child's SSI claims were adopted. The Welfare Reform Act, P.L. No. 104-193, 110 Stat. 2105, provides that:

> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

Thus, a child's SSI claim can be granted now only if there is a "marked and severe functional limitation(s)." The impairment must meet, medically equal, or functionally

Pennington for Roberts

equal in severity one of the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 2. 20 C.F.R. Section 416.924.

The implementing regulations require the agency to determine if the child's impairment(s) meet any Listing of Impairments sections found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. Section 416.924. If this step is not satisfied, the fact finder is required to consider limitation of specific functioning, broad areas of development or functioning, episodic impairments, and limitations related to medication effects to determine "functional equivalence" to the LOI. Section 416.926a. Functional equivalence is established if the child has one area of extreme functional limitations (i.e., very serious interference with functioning) or two areas of marked limitation (i.e., serious interference with functioning). Id.

## DISCUSSION

For the pertinent period,[1] the administrative law judge (ALJ) found that Desmond suffered from attention deficit hyperactivity disorder, oppositional defiant disorder, a reported history of Tourette's Syndrome and a history of Obsessive Compulsive Disorder. (Tr. 15). While the hearing judge did feel that the plaintiff's aggressive and impulsive behaviors had become exacerbated since September, 2003, he felt that none of the Listing of Impairments had been met. (Tr. 16). He

---

[1]The ALJ applied res judicata to the period prior to May 3, 2002, the date of a negative, final administrative decision on a prior application for benefits. The current alleged onset date in 2002 was subsequent to the prior opinion, at any rate. (Tr. 33).

believed that the Tourette's symptoms and Obsessive Compulsive Disorder did not more than minimally impact Roberts' functioning. (Tr. 16). The child was found to have either no or "less than marked" limitations in all but one functional domain; as for attending and completing tasks, he had "marked" limitations which by itself was insufficient to functionally equal any Listing of Impairment section. (Tr. 18-21). Benefits were denied. (Tr. 22).

At least a significant portion of the information from the school system was not particularly supportive of the plaintiff's claim. His counselor noted in early 2003 that he was enrolled in regular classes and noted that the pupil had scored in the 93rd percentile in math achievement tests several years before. (Tr. 168). At the same time, a teacher opined that there was a slight or no problem in paying attention when spoken to directly, sustaining attention during play/sports, waiting to take turns, changing from one activity to the other or completing work accurately without careless errors, albeit other deficits were noted. (Tr. 174). Seventh grade grades from 2002 and 2003 went from As to Fs (Tr. 183-185) with a seeming worsening as 2003 progressed (Tr. 195-197). Also included was a record of "tardies" (Tr. 186) and detention notices again with a worsening as 2003 progressed (Tr. 181, 198-209).

Records were submitted from the Cumberland River Comprehensive Care Center. As of late 2002, the plaintiff was described *as being on the Honor Roll in*

Pennington for Roberts

*Gifted and Talented Classes.* (Tr. 256). He was noted to be a "perfectionist" in his appearance and at schoolwork. (Tr. 259). However, Roberts was engaging in destructive behavior, reportedly because he was "bored" (Tr. 256). Nevertheless, he was generally seen as "cooperative" during his sessions from October, 2002 to May, 2003 (Tr. 262, 265, 267, 270, 274, 276, 279, 327, 342), and GAFs no lower than 60[2] were cited in 2002 and 2003 (e.g., Tr. 321). At one point in March, 2003 the staff psychiatrist did reported that the patient's symptoms had worsened in the past month and he was experiencing sedation as a side effect of a medication change(Tr. 244); however, the 60 GAF was also cited months afterward (Tr. 321).

The patient underwent an Adolescent Partial Program Admission at the Baptist Regional Medical Center in December, 2003. His mother reported to the facilities staff that the patient had been making "straight As up until this year but now he is making Ds and Fs" (Tr. 384) and he was having difficulty getting along with his brother (Tr. 388). He was admitted to work on anger management and his impulsivity (Tr. 417). The admitting psychiatrist found him to have an average intellect, age-appropriate insight, intact memory and mod neither elevated nor depressed. (Tr. 385). On the Braden Risk Assessment Tool, he was felt to have

---

[2]Scores between 51 and 60 are consistent with "moderate . . . difficulty in social, occupational or school functioning", and those between 61 and 70 are consistent with "some mild symptoms . . . but generally functioning pretty well" as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).

Pennington for Roberts

no impairment in all categories. (Tr. 408). In February, 2004, during his final session, he was described as an active participant, who was open and receptive, and looking forward to returning to school. (Tr. 434).

Finally, the record contained medical reviewers' assessments specifically indicating that there was no meeting or equaling of any of the Listing of Impairments Sections (Tr. 295-307). Given the lack of commentary from treating sources of the permanent restrictions suffered by the plaintiff or addressing the specific portions of the LOI, and the moderate GAF cited by one treating source, these were significant.

The decision will be affirmed.

This the _13_ day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE